# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 12, 2014

## STATE OF TENNESSEE v. BRIAN LEE JOHNSON

**Direct Appeal from the Criminal Court for Wilson County**
**No. 2011-CR-750    John D. Wootten, Jr., Judge**

---

**No. M2013-02503-CCA-R3-CD - Filed April 20, 2015**

---

A Wilson County Criminal Court Jury convicted the appellant, Brian Lee Johnson, of driving under the influence (DUI). Subsequently, the trial court convicted him of DUI, fifth offense; violating a habitual traffic offender order; and driving on a revoked license, fourth offense. After a sentencing hearing, the trial court sentenced him to an effective four-year sentence to be served as 315 days in confinement and the remainder on supervised probation. On appeal, the appellant contends that the evidence is insufficient to support the convictions. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Adam Wilding Parrish, Lebanon, Tennessee, for the appellant, Brian Lee Johnson.

Robert E. Cooper, Jr., Attorney General & Reporter; Jeffrey D. Zentner, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Linda D. Walls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In December 2011, the Wilson County Grand Jury indicted the appellant for DUI; DUI, fifth offense; violating a habitual traffic offender order; and driving on a revoked license, fourth offense. At the appellant's request, a jury trial was held only on the DUI charge. The trial court was to address, if necessary, the issue of whether the DUI conviction

qualified as a repeat offense and determine the appellant's guilt on the remaining two charges.

At the jury trial, Trooper Russell Peters of the Tennessee Highway Patrol testified that on the evening of August 6, 2011, he was dispatched to a wreck on Trousdale Ferry Pike. When he arrived, he saw a black Ford Ranger pickup truck "stuck on a mailbox." He said that Deputy Michael Long, the appellant, and "people in the yard who I assumed was the homeowners" were present. The appellant was leaning against Deputy Long's patrol car and using the car as a brace, which Trooper Peters thought was "odd." Trooper Peters spoke with the appellant and noticed that his eyes were "glazed over," that his pupils were dilated, that his tongue was "thick," that his speech was slurred, and that he "seemed to have trouble communicating and understanding simple questions." Trooper Peters saw no reason why the truck would have left the roadway because the road was straight, and it was not raining.

Trooper Peters testified that he administered field sobriety tests to the appellant. Based on the appellant's performance on the tests, Trooper Peters arrested him and put him into the back of the trooper's patrol car. The appellant agreed to submit to a blood alcohol test, so Trooper Peters drove him to University Medical Center in Lebanon. On the way to the hospital, the appellant slept, which indicated to Trooper Peters that the extent of the appellant's impairment was high. When they arrived at the hospital, a nurse drew blood from the appellant. The blood was later delivered to the Tennessee Bureau of Investigation (TBI).

On cross-examination, Trooper Peters testified that he was dispatched to the scene at 6:09 p.m. and arrived about 6:30 p.m. He acknowledged that he did not see the appellant operating the truck, sitting behind the wheel of the truck, or in physical possession of the truck. He said that the truck's front passenger side had hit the mailbox and that the truck appeared "totaled." Trooper Peters stated that he spoke with Deputy Long and that Deputy Long told him, "[Y]ou know, [the appellant was] probably the driver." Trooper Peters also talked with the appellant and a witness who had arrived shortly after the wreck and concluded that the appellant was the driver. Trooper Peters acknowledged that no one had seen the appellant driving the truck and that the appellant never admitted to driving it. In fact, the appellant claimed that his girlfriend was driving and that she left the scene. However, Trooper Peters did not believe the appellant. He acknowledged that the truck was not registered to the appellant and that the keys were not on the appellant's person. Trooper Peters later tried to speak with the appellant's girlfriend, but she refused to talk with him.

Bradley Morris testified that on August 6, 2011, he was traveling toward Lebanon on Trousdale Ferry Pike when he saw a black Ford Ranger that had hit a rock mailbox. Morris stopped his truck and approached the wrecked truck. He said that the appellant was sitting in the driver's seat and that the keys were in the ignition. Morris asked if the appellant

needed to use a telephone, and the appellant stated that he had already called someone. The appellant asked if Morris could "pull him down the road to Swindell Hollow," which was about one hundred yards away. Morris said that the wrecked truck was "a mess," that it was leaking radiator fluid, and that the passenger-side tire was flat. The appellant tried to start the engine, but it would not crank. The homeowner came outside, and Morris waited for a police officer to arrive. He said he remained at the scene about thirty minutes.

On cross-examination, Morris testified that he and the appellant had been traveling in the same direction before the crash. He said he arrived at the scene about 5:30 or 6:00 p.m., but he did not know when the wreck occurred. He said, though, that "[i]t hadn't been long. I mean, the cop hadn't even got there. The homeowner hadn't came out yet, to my knowledge." He acknowledged that another vehicle could have been present before he arrived and that someone other than the appellant could have been driving.

Richard Jones testified that he lived on Trousdale Ferry Pike. On August 6, 2011, he heard a "boom." Within five minutes of the sound, a neighbor knocked on his door. Jones went outside and saw that his rock mailbox had been "obliterated." He said he saw a truck and "the kid that I presumed was driving it." The appellant asked to use a telephone, and Jones saw that the front passenger side of the truck was "pretty much disfigured."

On cross-examination, Jones testified that when he came outside, the appellant was not inside the truck. Defense counsel asked why he thought the appellant was the driver, and Jones answered that the appellant "was the only one there." Jones acknowledged that prior to his coming outside, another vehicle and another person could have been present. He said it took about twenty minutes for the police to arrive.

Deputy Michael Long of the Wilson County Sheriff's Department testified that when he arrived at the scene, he saw a red vehicle "with its four-way flashers on." A black Ford Ranger was immediately behind the vehicle. The driver's door on the Ranger was open, and the appellant was standing beside the door. The appellant was very unsteady on his feet, his eyes were "glassy," and he had "very, very slurred speech." Deputy Long said that he "ran" the tag on the Ranger, that he called for assistance, and that Trooper Peters arrived.

On cross-examination, Deputy Long testified that the appellant tried to gain access to the Ranger and that he had to make the appellant move away from the truck. However, the appellant's "body went into the vehicle." Deputy Long said the appellant was detained because the appellant "was the only one there at the scene and he was by the driver door when I arrived." The appellant never claimed to be the driver of the truck. He was cooperative and did not try to flee.

Kelly Hopkins, a special agent forensic scientist with the TBI, testified as an expert in forensic toxicology that she performed alcohol testing on the appellant's blood. The blood tested negative for ethyl alcohol, so Agent Hopkins sent the blood for further testing.

April Bramlage of the TBI testified as an expert in forensic toxicology that she tested the appellant's blood for five classes of drugs. The appellant's blood tested positive for two of the drugs: benzodiazapines, which were typically given as sedatives, and marijuana. Regarding the benzodiazapines, the appellant's blood contained alprazolam, also known as Xanax, and diazepam, also known as Valium. In addition to the benzodiazapines and marijuana, the appellant's blood contained Carisoprodol and its metabolite, Meprobamate, which were commonly contained in Soma, a muscle relaxer. Bramlage said that a person's taking all of the drugs together would have had an "additive effect."

On cross-examination, Bramlage testified that, in her opinion, the appellant had taken three medications and smoked marijuana. She said that marijuana could be detected in a person's blood for thirty days and, therefore, that she did not know when he smoked the drug. She stated that the amount of diazepam in the appellant's blood was very high but still within the therapeutic range and that the amounts of Carisoprodol and Meprobamate were below the therapeutic range. The amount of alprazolam was slightly below the therapeutic range. However, given that all of the drugs were central nervous system depressants, they could have had a sedative effect on the appellant.

Misty Craig Howard testified for the appellant that she had known him about eight years. On August 6, 2011, Howard was going to stay overnight with the appellant and his girlfriend, Christa, and began following them home. Howard was driving her Impala, and the appellant and Christa were in a black truck. Christa was driving the truck, and the appellant was in the passenger seat. Christa drove the truck off Trousdale Ferry Pike, hitting a mailbox, and stopped. She got out of the truck and got into Howard's Impala, and Howard drove away.

On cross-examination, Howard testified that she was a close friend of the appellant's family. After the wreck, she and Christa went to the appellant's house. Howard never contacted the police about the crash, but an officer contacted her. She acknowledged that she knew the appellant did not have a driver's license and that he could have gotten into trouble for driving. Christa and Howard also did not have valid driver's licenses at the time of the wreck.

At the conclusion of the testimony, the jury convicted the appellant of DUI, and the trial court released the jury. The State immediately presented proof of the appellant's four prior DUI convictions, proof that he had been declared a habitual traffic offender, and proof

of his previous driver's license revocations. The trial court determined that the appellant was guilty of DUI, fifth offense, a Class E felony. The trial court also convicted him of violating a habitual traffic offender order, a Class E felony, and driving on a revoked license, fourth offense, a Class A misdemeanor. After a sentencing hearing, the trial court sentenced him to consecutive sentences of two years to be served as 150 days in jail and the remainder on supervised probation for the DUI conviction and two years to be served as 120 days in jail and the remainder on supervised probation for violating a habitual traffic offender order. For driving on a revoked license, the trial court sentenced him to eleven months, twenty-nine days to be served as 45 days in jail and the reminder on supervised probation. The trial court ordered that the appellant serve the 45 days of confinement consecutively to the 270 days for a total effective sentence of four years to be served as 315 days in confinement and the remainder on supervised probation.

## II. Analysis

The appellant contends that the evidence is insufficient to support the jury's guilty verdict for DUI because the State failed to prove that he drove, operated, or was in physical control of the truck. In a related argument, he contends that the evidence is insufficient to support the trial court's finding him guilty of violating a habitual traffic offender order and driving on a revoked license because, while the State could prove DUI by merely showing that he was in physical control of the truck, the remaining charges required that the State prove he was actually driving the truck. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting State v. Marable, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 55-10-401(a)(1), the DUI statute, provides, in pertinent part, that

> [i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor vehicle on any of the public roads and highways of the state . . . while . . . [u]nder the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle[.]

Tennessee Code Annotated section 55-10-616(a) provides that it is unlawful for any person "to operate" a motor vehicle while a habitual traffic offender order prohibiting such operation is in effect. Finally, pursuant to Tennessee Code Annotated section 55-50-504(a)(1), a person is guilty of driving on a cancelled, suspended, or revoked license if the person drives a motor vehicle on any public highway of the state at a time when his or her privilege to do so was cancelled, suspended, or revoked.

The crux of the appellant's sufficiency claims relates to whether the evidence is sufficient to show that he was driving the truck at the time of the wreck. Bradley Morris testified that he arrived at the scene shortly after the crash. He said that the appellant was sitting in the driver's seat of the truck, that the key was in the ignition, that the appellant tried to start the truck, and that no one else was present. Richard Jones testified that he came outside within five minutes of hearing the crash, that the appellant was outside of the Ranger, and that no one was present with the appellant. When the police officers arrived, the appellant claimed that his girlfriend had been driving the truck. However, the jury and the trial court obviously discredited his testimony. It is the province of the trier of fact to assess the evidence and the credibility of the witnesses, and we do not revisit those determinations with respect to these issues on appeal. See, e.g., State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012). Taken in the light most favorable to the State, the circumstantial evidence is

sufficient to support the appellant's convictions.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE